IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WENDELL MATHIS,

        Plaintiff,

v.                                                    CIV 99-1398 LH/KBM

DONA ANA COUNTY DETENTION
CENTER, et al.,

        Defendants

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendants' comprehensive *Martinez* report, *Doc. 26,* Plaintiff's response to it, *Doc. 30,* and Plaintiff's motion to join to add a prison doctor and administrator, *Doc. 25.* Having thoroughly reviewed the record, I recommend that this action be dismissed with prejudice.

Plaintiff brings this action under state and federal law alleging Defendants wrongfully housed him (a federal detainee) with state inmates, failed to protect him from an assault, and denied him medical care. *See Doc. 22.* In his response to the *Martinez* report, Plaintiff abandons his failure to protect and mixed housing claims. Furthermore, they are without merit.

As Defendants' report demonstrates, there is nothing in the applicable Bureau of Prison regulation, the Dona Ana County detention center regulations, or its contract with the United States Marshal that *requires* state and federal inmates to be housed separately. *See Doc. 26,*

*Exhs. IV;[1]* 28 C.F.R. § 551.104 ("*To the extent practicable,* pretrial inmates will be housed separately from convicted inmates.") (emphasis added).

The *Martinez* report also establishes that there was no basis for believing Plaintiff was in any danger prior to the fight on February 16, 1999. The week before the fight, Plaintiff was agitated. He had been placed on a restrictive diet due to a lack of teeth, high blood pressure and borderline diabetes, but craved sweets. He was able to purchase them but was not given them on his food tray. Mathis had also wanted certain medication changed. He was verbally abusive toward jail personnel, filed a number of grievances and threatened to sue the doctor. *See Exhs. I.B.8, I.C. et seq. - I.D et seq.* A week before the fight he said his "depression meds don't work. I was wrong for taking it out in the guards. This was my depression at its max. Out of self control because of my medical problems." *Exh. I.D.1.C.* One day before the fight, he again complained about his diet and said "my blood pressure is up. It's hard to resolve anything around here." *Exh. I.D.1.D.*

On the day in question, the officer who observed the fight reported that Plaintiff instigated the altercation with another inmate in the cafeteria. Plaintiff reportedly said he was "tired and mad" about his diet "because he did not get a sweet dessert" and none of the other inmates would trade trays with him. *Exh. I.C.3 (Florez report).* Later, Plaintiff related that he "shared his goods and when it came time to trade they wouldn't, so I give my tray back to the guards then everybody wanted it for free and I told the whole pod fuck you sons of bitches. I was going to kick all extra trays so nobody get extra. HAAA." *Exh. I.D.2.D.* The day <u>after</u> the fight Plaintiff

---

[1] Unless otherwise noted, all citations to Exhibits are those attached to the *Martinez* report.

advised corrections officers that other inmates threatened him, and Plaintiff was immediately placed in lockdown for his protection. *Exh. I.C.4.*

As to his denial of medical care claim, after the fight Plaintiff was treated by the infirmary for a variety of ailments and complaints. Mathis was seen in the infirmary at least once a week and, more often, several times a week for at least several months. *See Exh. I.B.8.* Plaintiff complains in conclusory fashion that he was not given pain medication, but the records indicate that immediately following the fight he was treated with ice, Tylenol, ibuprofen, and antibiotics for a wound to his left elbow. *Id.* Only minor injuries were noted and photographs were taken that support that conclusion. *See id; see also Exhs. I.B.14; I.C.11.*

Plaintiff's most serious allegation is that during the fight, his hand was broken and his elbow was chipped, and that Defendants did nothing until after he filed months of grievances and threatened to sue. However, the record (including exhibits attached to Plaintiff's response) reveals otherwise. The injury to Plaintiff's elbow was an open wound, which was monitored and treated. When the doctor ordered x-rays to determine whether the condition was degenerative or a fracture, the results showed "left elbow reveals no fracture or disloc[ation] . . . [n]ormal left elbow" and his right hand "reveals an old healed fracture." *See Exhs. I.B.13-14.* It should be further noted that Plaintiff had chronic arthritis at the time of his incarceration and was being medicated for it. *See Exhs. I.B.1, I.B.8, I.B.15.*

Mathis also mentions that his teeth had to be pulled as a result of being kicked during the fight. Plaintiff was already missing teeth upon his incarceration. *Exh. I.B.1.* On March 8, 1999, he signed an agreement to be placed on the dental list, to have teeth extracted if recommended by the dentist. The agreement also indicated that "routine dental care is deferred." *Exh. I.B.17.*

Plaintiff wanted aspirin and complained that his doctor "seems to think that [the medication he was taking for his chronic arthritis] will stop my teeth from hurting."  Doc. 30, Exhs. 12, 14.

The medical records and Plaintiff's grievances show that Mathis was indeed treated for his complaints.  When he complained of tooth pain on March 10, 1999 and attributed the pain to the fight,  his doctor noted that two teeth "show some movement when manipulated."  However, the doctor also diagnosed mouth ulcers and "thrush – probably secondary to poor oral hygiene + excessive sweets."  *Exh. I.B.8.*  Remarking that Plaintiff was already on the dental list, the doctor prescribed lowering sweets, increasing fluids, good oral hygiene, and "hystatin oral supp . . . held in mouth and swished."  *Id.*  Later that year Plaintiff had teeth extracted.  *Doc. 30, Exh. 1.*

I find no material issues of fact exist.  The record establishes that Defendants were conscientious and promptly attended to Plaintiff's safety and medical needs.  They were in no way negligent and certainly not deliberately indifferent to those needs.  *E.g., Farmer v. Brennan,* 511 U.S. 825, 833-834 (1994) (failure to protect); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (denial of medical care); *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (delay in medical care).  As such, summary judgment should be granted in favor of Defendants on Plaintiff's federal claims.  *See Raymer v. Enright,* 113 F.3d 172, 174 n. 1 (10th Cir.), *cert. denied,* 522 U.S. 872 (1997); *Hall v. Belmon,* 935 F.2d 1106, 1109 (10th Cir. 1991).

I further find it is appropriate to exercise supplemental jurisdiction and dispose of the state claim as well, since the same facts are applicable to both claims and federal jurisdiction was "substantial."  *See United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.,* 210 F.3d 1207, 1220 (10th Cir.) (federal claim must be insubstantial from outset to deprive court of discretion to entertain state claim), *cert. granted in part on different grounds,* 121 S. Ct. 425 (2000); *see also*

4

*United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966) (substantial federal claim has "substance sufficient to confer subject matter jurisdiction on the court"); *Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (district court lacks subject-matter jurisdiction when the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.").

Even assuming the actions of Defendants could be characterized as negligent and that they qualify as law enforcement officers under the New Mexico Tort Claims Act, Plaintiff's state claim fails.

> The immunity granted pursuant to Subsection A of Section [N.M. STAT. ANN. § 41-4-4] does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. STAT. ANN. § 41-4-12.  Plaintiff has not alleged facts which fall within this waiver of immunity.  Plaintiffs claims do not rise to the level of an Eighth Amendment violation, and negligence is not one of the torts named in the act.  Finally, Mathis' motion to join additional parties raises no new issues and should be denied.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** Plaintiff's motion to join additional parties be denied *(Doc. 25)* and this action be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any**

**objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE